### BRUNS et v WHITE et

Ohio Appeals, 2nd Dist, Franklin Co

Nos 2241, 2246 & 2254.

Decided Jan 30, 1933

Emery Glander for Ohio State Council of Retail Merchants, amicus curiae.

Vorys, Sater, Seymour & Peace, Columbus, for The Ohio Newspaper Ass'n and Associated Ohio Dailies, amicus curiae.

John W. Bricker, Attorney General, Columbus, and Ass't Attorney General for defendants, The Ohio State Board of Optometry.

J. B. Dworken, Cleveland, for J. B. Dworken.

Cowan, Adams & Adams, Columbus, for defendants, Better Vision Society of Cleveland and Ohio State Optometric Ass'n.

HORNBECK, J.

The questions presented in this case are interesting and of importance. To restate the facts as developed in the petition and to discuss the many legal questions so ably presented by counsel for the parties in the case would require an opinion more extended than the law as we conceive it requires.

We would hesitate to entertain an action to enjoin the defendant board upon the claim of prejudice. This is the only board in the State of Ohio empowered to pass upon and determine questions involving the suspension or revocation of certificates of license to optometrists. Should it be possible for an optometrist charged with an act, the consequences of which would permit revocation of his license, to avoid a hearing by claim of prejudice, the ability of the board to function might be completely impaired. If it could not act, then there would be no other body under the law which would have any authority in its stead to perform the duties delegated to it.

The rights of any individual against whom charges were made of violation of §1295-31, GC, in all cases wherein the board had jurisdiction would be properly preserved by saving the record and perfecting appeal. We do not find that the process for appeal set up by this statute is unreasonable or incapable of application.

The regulation of the practice of optometry, the setting up of the Board, the definition of the science, and qualifications required of applicants, the grounds for granting and refusing a certificate of license, the causes for the revocation of a license all are creatures of statutory enactment.

We are not considering the extent to which the state might have exercised its police power but how far it has seen fit to exercise this prerogative. We do not say, nor do we believe it is necessary to say that the legislature could not have authorized the promulgation of the rules of the State Board of Optometry under consideration. Police power, as defined in **Wooster v Arbenz, 116 Oh St 281**, 3rd syl., is:

"The police power is the power to guard the public morals, safety and health and to promulgate the public convenience and the common good and is one of the powers not surrendered to the federal government and therefore remains with the states respectively."

And in **Leonard v State of Ohio, 100 Oh St, 456**, the court says:

"The measure of police power available to the government is the measure of public need, whether it apply to health, safety, protection or general welfare, except as qualified by state and federal constitution."

Thus, we have a very different question if the State of Ohio has by legislative ac-

tion directly or indirectly sanctioned the prohibition on the means and method of the practice of optometry included within the rules under consideration.

Nor is it necessary to determine whether or not optometry is in a technical sense a profession.

In Saunders v Swann (Tenn.), 292 SW, 458, the court made distinction between oculists and optometrists, designating the former as a learned profession relating to practice of medicine and surgery in treatment of eye diseases, and the latter as occupation or vocation calling for degree of mechanical skill and experience in fitting glasses to eye.

The science of optometry, though it may require much preparation and skill, is not commonly known as one of the learned professions. Without statutory intervention there would be no protection of the law to optometrists except that which would apply to any business man. A well defined ethical code of practice might well grow up in this profession and a failure to observe it place a member beyond the pale of ethical conduct, but without legislative action there would be no legal method of enforcing such conduct upon any member of the profession. It is necessary, therefore, to look to the statute and to the statute alone for the scope of the power of the State Board of Optometry. This is found, as it relates to revocation of license, in §1295-31, GC, as follows:

"The board * * * may cancel, revoke or suspend the operation of any certificates by it granted to any person guilty of fraud in passing the examination or at any time guilty of felony or gross immorality, grossly unprofessional or dishonest conduct, guilty of fraudulently advertising a price of spectacles or eye glasses, by cards, circulars, statements or otherwise, with intent to deceive or mislead the public, or addicted to the use of ardent spirit, or stimulants, narcotics or any other substance which impairs the intellect and judgment to such an extent as to incapacitate one for the performance of the duties of an optometrist."

The charge against each of the plaintiffs is

"(1). That he has been guilty of grossly unprofessional conduct in this, to-wit:
That he has aided and abetted a corporation in the violation of law to practice Optometry, well knowing that said corporation had no power of authority to do so. That he has violated Rules 5, 6, 7, 8 and 10 of the Rules and Regulations of the Ohio State Board of Optometry.

(2) That he has been guilty of dishonest conduct in this to-wit:
Aiding and abetting a corporation to practice Optometry and violation of the rules hereinbefore set forth.

(3) That he has been guilty of fraudulently advertising a price of spectacles or eye glasses with intent to deceive or mislead the public in this to-wit:
That he in connection with ———, a corporation, located at ———, have put in the various newspapers in the City of ——— certain advertising which is fraudulent and which has a tendency to deceive and mislead the public."

The rules of the defendant board out of which the present controversy arose are as follows:

Rule 5: "An optometrist shall not advertise a price or prices of glasses complete, a spectacle frame or mounting, an eye glass frame or mounting, or an opthalmic lens used in the practce of optometry, nor shall he be associated with or remain in the employ of any person who does such advertising."

Rule 6: "An optometrist shall not have any professional connection with, accept employment from or lend his name to any person not duly licensed to practice optometry in the State of Ohio, and who holds himself out as offering optometric services or facilities."

Rule 7: "An optometrist shall not have any professional connection with, accept employment from or lend his name to any partnership, firm, association or corporation which holds itself out as offering optometric services or facilities. This, however, shall not prohibit employment by, or the forming of partnerships between, optometrists duly licensed in the State of Ohio."

Rule 8: "An optometrist shall not make any division of his fees or other charges with any person, firm, partnership, association or corporation."

Rule 10: "An optometrist shall not advertise any claim which in the opinion of the board would have a tendency to mislead or deceive the public or advertise 'free examinations' or 'examinations included,' or similar words or phrases."

Suffice to say that Rules 5 and 10 are much broader in import and meaning than

is authorized by the statute. Rule 5 omits altogether the element of fraudulent advertising and advertising with intent to deceive or mislead the public. An advertisement such as is prescribed by the rule may be truthful in every particular and definitely inform the public just what it may receive for a certain sum of money and yet be in violation of the rule. We can not interpret the section in any view thereof as authorizing the rule. Newspaper advertising in this modern age certainly is of marked convenience and advantage to the purchasing public. So long as it is truthful it serves a useful purpose. To deny this service to the public would involve a serious question of legislative policy, if not of constitutional authority.

Rule 10 is subject to the same objection as Rule 5 and also the further infirmity in that it leaves to the board a determination whether or not the advertisement has a tendency to mislead or deceive the public. The statute is not that broad, nor can the board determine an act to have a tendency to mislead or deceive the public which, in fact, may have no such tendency.

Rules 6, 7, and 8 raise the only question in this case which under the authorities is in any doubt. The question arises, is there any cause for cancellation, revocation, or suspension of the license of plaintiffs found in the rules as interpreted under the phraseology of the statute, "grossly unprofessional or dishonest conduct."

We are expressing no opinion as to the extent to which the Legislature could authorize the defendant board to make and enforce the rules under consideration but if, in any event, it can be done the policy is one to be determined by the legislature and thus far it has not seen fit, by legislative action, to adopt such policy.

Grossly unprofessional conduct as relates to the optometrist is not defined in the statute. In that portion of Chapter 20 devoted to the State Medical Board, §1275 GC, there is marked similarity to §1295-3, GC, in the grounds for the revocation of certificate. Quotation of §1275 GC will exemplify how nearly these two sections parallel in phraseology:

"The state medical board may refuse to grant a certificate to a person guilty of fraud in passing the examination, or at any time guilty of felony or gross immorality, grossly unprofessional or dishonest conduct, or addicted to the liquor or drug habit to such a degree as to render him unfit to practice medicine or surgery."

Sec 1275 GC, unlike §1295-31, GC, carries a definition of grossly unprofessional or dishonest conduct. Here we have the conception of the Legislature of what it meant by the use of the language "grossly unprofessional or dishonest conduct" as relates to the medical profession. Statutory interpretation requires us to look at this definition where used in an analogous relation. Insofar as this definition is applicable to the profession of optometry we observe nothing which would permit us to say that anything which it is claimed the plaintiffs have done or propose to do could be classified as "grossly unprofessional conduct." That portion of §1275 GC relating to advertising has for its purpose the prevention of advertising matter or statements having a tendency in fact to deceive and defraud the public.

The only uncertainty respecting unprofessional conduct as applicable to the plaintiffs is found in their connection with corporations, department stores or other mercantile businesses and the carrying of the advertisement of the optometrist in conjunction with the advertisement of the store or corporation. In this connection we consider the most favorable case cited on behalf of the defendants, the decision in which has been released since the determination of this cause in Common Pleas Court, viz., Painless Parker v The Board of Dental Examiners, 14 (2d) Pac. 64.

This case must be considered as it would have application to the dental profession under the Ohio statute. Upon such analysis it is helpful in determining the question presented in the instant case. In an examination of the code respecting regulations on practice of dentistry, we find two sections which are applicable, §§1325 and 1329-1, GC.

Sec 1325, GC: "The state dental board may revoke or suspend a license obtained by fraud or misrepresentation, or if the person named therein is convicted subsequent to the date of his license of a felony involving moral turpitude, or becomes guilty of chronic or persistent inebriety or addiction to drugs; or if the person holding such license shall advertise with a view of deceiving the public; or be guilty of any grossly immoral conduct likely to deceive or defraud the public; or which disqualifies the applicant to practice with safety to the people."

Sec 1329-1, GC: "It shall be unlawful for any person or persons to practice or offer to practice dentistry or dental surgery, under the name of any company, association or corporation, and any person or persons practicing or offering to practice dentistry or dental surgery shall do so under his name only; * * *."

It will be noted that §1325 GC is much like §1295-31 GC but there is no section paralleling §1329-1 GC, in the act relating to optometry. The decision in Painless Parker v The Board of Dental Examiners, supra, could, if it had arisen in Ohio, have very properly been grounded upon the provisions of §1329-1 GC which relate exclusively to dentistry. But there is no foundation in the statute of Ohio upon which to predicate a decision relating to the practice of optometry by one of its members in association with a corporation as set out in the petition, without some such statute as is found in §1329-1 GC.

The briefs in this case by counsel for the respective parties, have discussed all propositions advanced from every standpoint. If there is any one ground authorizing the granting of an injunction under the averments of the petition, then it is unnecessary to discuss any other reason which may be advanced.

We are of opinion that measuring the delegated authority of the board by §1295-31 GC, it has exceeded its power in enacting the rules under consideration in this case, and that under the averments of the petition none of the plaintiffs could properly have been found to have violated any of the acts authorized to be prescribed by the section. Therefore, it would have been a useless and vain act to have proceeded with hearings on the charges against the plaintiffs. This being true, it is evident injunction is a proper remedy and may be invoked.

We are further of the opinion that as to the defendants other than the board the petition as against demurrer admitting everything therein well pleaded to be true also states a cause of action.

The finding and judgment will therefore be in favor of the plaintiffs. As we have considered and determined the appeal case No. 2241, the error cases Nos. 2246 and 2254 will be dismissed.

ALLREAD, PJ, and KUNKLE, J, concur.